# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In Re: | Chapter 11, Subchapter V |
| | Case No: 22-00353 |
| SUPERIOR ENVIRONMENTAL CORP. | Hon. Scott W. Dales |
| | Filed: February 25, 2022 |
| Debtor. | |
| _____/ | |

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (A) AUTHORIZING IT TO USE CASH COLLATERAL; AND (B) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF

NOW COMES Debtor, Superior Environmental Corp. (the "Debtor"), by and through its attorneys, CBH Attorneys & Counselors, PLLC, and files its *Emergency Motion for Entry of an Interim and Final Order (A) Authorizing It to use Cash Collateral; and (B) Providing Adequate Protection and Other Relief* (the "Motion"), and in support of its Motion states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(M).

3. Venue of this proceeding and the Motion is in this District is proper under 11 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §105, 361 & 363.

**BACKGROUND**

4. On February 25, 2022 (the "Petition Date"), Debtor filed for its Bankruptcy Petition (the "Petition") under Chapter 11, Subchapter V, of the United States Bankruptcy Code (the "Bankruptcy Code"). Debtor filed this Motion as soon as practical after the Petition Date.

5. Debtor continues to operate its business and manage its financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §§1107(a) and 1108 of the Bankruptcy Code.

6. Debtor files this Motion pursuant to Fed. R. Bankr. P. 4001 and 4003.

**RELIEF REQUESTED**

7. Debtor is an environmental services consulting company that provides consulting, investigation, monitoring, and remediation services. Debtor's headquarters is located at 50 64th Ave. S., Suite C, Coopersville, Michigan 49404. See **Exhibit A: Sworn Statement of Jeffery Skendrovic**.

8. Debtor is in immediate need of an Order authorizing the use of cash collateral in order to sustain its operations and preserve its assets for the benefit of the estate and the creditors.

9. Shortly after filing its Petition, Debtor anticipates filing a motion seeking authority to sell substantially all of its assets to a competitor, AKT: Peerless Environmental Services, LLC ("AKT").

10. Prior to filing its Petition, Debtor suffered multiple economic impairments, including: (i) entry of a judgment against Debtor for more than $580,000.00; (ii) the loss of a key sales person who generated substantial revenue; and (iii) the unexpected resignation of its CEO.

11. Debtor's Board of Directors (the "BOD") analyzed options, including reorganizing its liabilities, selling its asses as a going concern, or liquidating its assets.

12. As part of its analysis, the BOD solicited offers from potential buyers. Due to the specialized nature of Debtor's business, and its geographic footprint, the number of potential buyers or strategic partners are limited. The Debtor, as a result of its position in the industry, is aware of substantially all of the potential buyers.

13. On January 26, 2022 the Debtor signed a Letter of Intent with (the "LOI") with AKT, which provided for the purchase of substantially all of Debtor's "non-cash" assets for the sum of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00)(the "Offer Price").

14. Subsequent to signing the LOI, Debtor was able to successfully negotiate a Twenty-Five Thousand and 00/100 Dollar ($25,000.00) increase to the Offer Price, which results in a total purchase price of Two Hundred Seventy Five Thousand and 00/100 Dollars ($275,000.000)(the "Purchase Price").

15. The long-term nature of environmental service projects creates the potential for historical liabilities, as recently demonstrated by Murphy Oil's $580,000.00 judgment for a contract that was executed twenty-five years prior to the litigation; therefore, AKT's Purchase Price is contingent upon Debtor obtaining authority to sell its assets free and clear of liens and encumbrance under section 363 of the Bankruptcy Code.

16. On February 25, 2022, Debtor and AKT executed an Asset Purchase Agreement (the "APA"), which included the Purchase Price, the requirement for a sale under section 363 of the Bankruptcy Code, and the other terms and conditions negotiated by the Parties.

17. Contemporaneous with this Motion, Debtor will file a motion seeking authority under section 363 of the Bankruptcy Code to sell certain assets pursuant to the APA.

18. The Purchase Price proposes to sell substantially all of Debtor's "non-cash" assets, including (i) machinery, equipment, and included vehicles; (ii) customer contracts, intellectual property; and (iii) certain intangible property rights (the "Purchased Assets").

19. The total value of the Purchased Assets is attributable to $174,145.00 for the machinery, equipment, and vehicles; and $99,855.00 for the customer contracts, intellectual property, and certain intangible property rights.

20. Based on the Purchase Price of the Purchased Assets, and the anticipated liquidation value of the remaining "cash assets," Debtor believes that any secured or unsecured priority claims will receive payment in full on their allowed claims within 120 days[1] of the Petition Date and unsecured non-priority claims will receive estimated distributions of more than 50% of their allowed claims within 180 days of the Petition Date. **See Exhibit B: Estimated Liquidation Analysis.**

21. In addition, the proposed sale provides other intangible benefits, including: (i) AKT will, at its sole discretion, hire many of Debtor's employees; and (ii) AKT will assume, subject to client approval, a significant number of Debtor's ongoing projects. AKT's assumption of Debtor's employees and contracts will result in fewer claims against Debtor, which will result in higher distributions to Debtor's other creditors and will best fulfill the national public policy favoring swift and complete resolution of potential environmental hazards.

22. Accordingly, despite the short-term operating losses that Debtor will incur between the Petition Date and the closing date, selling the Purchased Assets to AKT is in the best interest of Debtor, Debtor's employees, Debtor's creditors, Debtor's costumers, and the general public.

---

[1] This estimate assumes that the proposed 363 sale to AKT is approved and that Debtor's liquidating Chapter 11 Plan is approved within 120 days of the Petition Date.

23. If Debtor is unable to obtain authority to continue its operations while pursuing the sale of the Purchased Assets, then the ongoing concern value of Debtor intellectual property, and intangible property rights will suffer, which may result in AKT reducing or withdrawing its offer.

24. Through this Motion, Debtor seeks the entry of interim and final Orders (i) granting and affirming adequate protection to Debtor's creditors secured against cash collateral, (ii) authorizing Debtor's use of cash collateral; and (iii) scheduling a final hearing.

## DEBTOR'S CASH COLLATERAL AND SECURED CREDITORS

25. Contemporaneous with this Motion, Debtor will file a motion with this Court seeking to obtain authority to sell substantially the Purchased Assets to AKT.

26. The Purchase Price for the Purchased Assets requires the transaction to close under section 363 of the Bankruptcy Code and includes $99,855.00 that is attributable to the value of Debtor's ongoing concern (intellectual property and intangible property).

27. If Debtor cannot operate between the Petition Date and closing date, then Debtor's value as an ongoing concern may be substantially reduced.

28. Once the sale of Debtor's Purchased Assets closes, Debtor will incur minimal ongoing operating expenses while it liquidates its remaining assets.

29. Debtor believes that, despite the short-term operating losses it will incur between the Petition Date and the closing date, selling its Purchased Assets to AKT and quickly liquidating its remaining assets through a liquidating Chapter 11 Plan will result in the highest net return for its creditors.

30. The Debtor has an immediate need for use of cash collateral to continue its operations, purchase materials and supplies necessary for ongoing projects, pay its lease payments,

meet its payroll and other necessary, ordinary business expenditures, and preserve the value of its estate for the benefit of all creditors.

31. The Debtor has prepared an operating budget and cash flow projections ("Budget"), attached as **Exhibit C: Cash Flow Projection**, which contains projected sales and an anticipated Budget of all necessary expenditures going forward that are necessary to be paid to avoid irreparable harm to the estate for the next thirty (30) days.

32. Allowing Debtor to use revenue generated from continuing to service its environmental remediation projects is in the best interest of Debtor's creditors because the net revenue deficiency is more than offset by the higher sale price generated by liquidating Debtor's assets as a going concern.

33. Mr. Skendrovic, Debtor's COO has the primary responsibility for its day-to-day financial operations. His certification in support of this Motion, is attached as **Exhibit A: Sworn Statement of Jeffery Skendrovic.** In addition, Debtor attached **Exhibit C: Cash Flow Projection**, which provides a detailed five week estimated budget with a sixty (60) total budget,[2] and **Exhibit B: Estimated Liquidation Analysis**. Taken together, Debtor's exhibits demonstrate a reasonably likelihood that Debtor's short term operating losses will be more than offset by the additional sale's proceeds generated by selling Debtor's Purchased Assets as a going concern.

34. The following is a summary of Debtor's estimated assets on the Petition Date as disclosed in the Bankruptcy Schedules by Debtor and acknowledged by Mr. Skendrovic:

    a. Bank Accounts    $140,354.84__

---

[2] The cash flow projection currently provides detailed five week estimates of revenue and expenses. The five-week estimate is intended to reflect income and expenses pending the sale of Debtor's assets to Superior. The projection also includes a month end estimate for April. However, the month end projection does not reflect the sale of the assets. If Debtor's motion to sell its non-cash assets to AKT is approved, then Debtor will provide an updated projection that reflects the minimal remaining expenses necessary to liquidate its cash assets.

b. Cash            $250.00

c. 2021 Employee Retention Tax credit            $286,101.93

d. Accounts Receivable[3]            $446,769.27

e. Prepaid Assets            $62,927.09

f. Machinery & Equipment            $7,079.00[4]

g. Office Furniture & Equipment            $10,466[5]

h. Vehicles and Trailer            $160,600.00[6]

i. Intellectual Property and Intangible Property            $99,855.00[7]

j. Judgment against Roger McIntosh, LLC            $57,367.14

k. **Total**:            **$1,271,750.20**

35. The value of Debtor's cash collateral is approximately $993,770.27, which includes the Bank Accounts, Cash, 2021 Employee Retention tax credits, Accounts Receivable, Prepaid Assets, and the account receivable for the judgment against Roger McIntosh, LLC.

36. Debtor believes the following lenders are likely to assert an interest in one or more of the aforementioned assets, including[8]:

a. Janes R. Quince and Vaughn V. Quince[9]

    i. First Priority – filed on August 1, 2017

---

[3] Aggregate receivables for A/R of $447,488.10, less $120,718.83 for A/R over 120 days, plus estimated Work In Progress for February of $120,000.00 = $446,769.27
[4] Based on Book Value.
[5] Based on Book Value.
[6] The vehicle values include the net estimated value for the 2019 Ford Ecosport. The estimated value of the Ecosport is $18,000.00; however, the Ecosport also has a lien against it from Ford Motor Credit for approximately $15,000.00. Accordingly, the value of the Ecosport is estimated at $3,000.00 for purposes of this disclosure.
[7] Best estimate of "going concern" value for Detbor's IP and Intangible assets based on offer from AKT.
[8] All amounts listed are estimates. Debtor has additional secured liabilities; however, none of those liabilities are secured against cash collateral. Each additional secured liability is secured to specific personal property, including vehicles and equipment.
[9] United Bank held a first position security interest in Debtor's cash collateral; however, Debtor paid United Bank's claims in full prior to filing its Petition.

      ii. Amount: $143,557.00

      iii. Lien on: "All assets or all personal property that Debtor now owns or acquires in the future."

  b. U.S. Small Business Administration
      i. Second Priority – filed on February 1, 2021
      ii. Amount $150,000.00
      iii. Lien on: "All tangible and intangible personal property, including, but not limited to: (a) inventory; (b) equipment, (c) instruments, including promissory notes, (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms ay from time to time be defined in the Uniform Commercial Code.  The security interest Borrow grants includes al accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds, and collections thereof and all records and data relating thereto."

37. Upon information and belief, there are no other secured creditors that could claim any interest in Debtor's cash collateral.

## BASIS FOR RELIEF

38. 11 U.S.C. § 363(c)(2) sets the terms for a Court's approval for use of cash collateral, providing that a debtor "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

39. Under § 362(e), upon request of an entity that has an interest in property to be used by the debtor, "the Court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

40. Adequate protection serves to protect secured creditors from a diminution in the value of its collateral during the Chapter 11 proceeding. *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich 1988).

41. Debtor has the burden of establishing that a secured creditor is adequately protected. 11 U.S.C. § 363(p).

42. "A debtor, attempting to reorganize a business under chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *In re George Ruggerie Chrysler-Plymouth, Inc*, 727 F.2d 1017, 1019 (11th Cir. 1984).

## DEBTOR'S USE OF CASH COLLATERAL

43. The use of cash collateral is necessary to preserve the value of the estate and benefit the creditors.

44. Debtor requires use of the cash collateral to pay its employees and ordinary expenses of operating the business such as insurance, rent, utilities, and inventory, as well as payment of post-petition professional expenses and fees as approved by this Court.

45. Debtor also requires use of the cash collateral to maintain and preserve assets, including repairs and maintenance of its vehicles.

46. Debtor anticipates that it the short-term operating losses generated between the Petition Date and closing date will be offset by the additional sale's proceeds generated by selling Debtor's assets as a going concern.

47. Accordingly, use of cash collateral is essential to avoid irreparable harm to the Debtor by preventing Debtor from generating revenue sufficient to continue operating its business and to preserve the value of the estate.

48. Pursuant to the adequate protection identified below, Debtor submits that it should be granted authority to use the cash collateral.

**OFFERS OF ADEQUATE PROTECTION OF SECURED CREDITORS**

49. As adequate protection for the use of the cash collateral described in Paragraphs 31 – 35, Debtor offers the following as adequate protection under 11 U.S.C. §§ 361 & 363 concerning any diminution in pre-petition collateral:

   a. Secured creditors shall be granted continuing and replacement security interest in liens on all of the Debtor's post-petition property, excluding the Debtor's rights under 11 U.S.C. §544 et seq.; however, nothing in this paragraph shall be deemed to provide any creditor with an <u>improvement</u> of position from the values of said creditors respective collateral, as of the date of the Petition nor grant any interests in any property which said creditor does not have a properly perfected lien;

   b. The proceeds of any sale by Debtor of any property is subject to liens held by Secured Creditors (other than sales in the ordinary course of business) shall, unless said creditor agrees in conjunction with the approval of a sale under 11 U.S.C. § 363 of the Code or the Court orders otherwise, be paid to said creditor for application to said creditor's indebtedness; and

   c. The Debtor shall supply financial information and information relating to the collateral as is reasonably requested by each Secured Creditor. In the event that the Debtor and the Secured Creditor cannot agree as to what report(s) shall be provided, the Court shall, upon notice and a hearing, make a determination. The Debtor anticipates it will provide Secured Creditors with (i) profit & loss statements; (ii) payables aging; (iii) accounts receivable aging; (iv) copies of such reports and

documents as are required to be filed with the Office of the United States Trustee;

(v) proof of timely payment of taxes and insurance.

50. Debtor believes these procedures, will adequately protect the secured creditors.

51. Debtor's use of cash collateral pursuant to the order shall cease upon the occurrence of one of the following: (i) debtor fails to comply with its promises of adequate assurance in any fashion; (ii) the appointment of a Chapter 11 trustee (other than the Subchapter V Trustee automatically appointed in a Subchapter V proceeding); (iii) conversion of this Chapter 11 proceeding to a Chapter 7; (iv) this Chapter 11 proceeding is dismissed without the consent of the Secured Creditors; or (v) a material diminution in the amount of the Debtor's Cash Collateral Assets and, after notice and hearing, the Court determines that the Cash Collateral Assets are in excess of any adequate protection provided herein. Debtor reserves its right to contest a default in the event that a Secured creditor declares a default under this paragraph and, upon a determination by the Court that the adequate protection is intact, Debtor shall not be deemed in default hereunder.

## **NOTICE**

52. Notice of this Motion will be provided to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor which may have a claim in Cash Collateral; (c) the Debtor's twenty (20) largest unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.

53. The Debtor further requests that the Court schedule a final hearing on this Motion and authorize it to serve copies of an interim order entered by the Court which fixes the time, date and manner for the filing of objections to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor; (c) the Debtor's top twenty (20)

unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court. The Debtor requests that the Court consider such notice of the final hearing to be sufficient under Fed. R. Bankr. P. 4001

**WHEREFORE**, Debtor respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit D: Proposed Order**, granting the relief requested herein and such other and further relief as it deems just and proper.

Respectfully submitted,

**CBH Attorneys & Counselors, PLLC**

Dated: February 28, 2022     By:     */s/ Steven M. Bylenga*
Steven M. Bylenga (P73492)
Attorneys for Debtor
25 Division Ave S., Suite 500
Grand Rapids, MI 49503
Tel.: (616) 608-3061