UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

SUPERIOR ENVIRONMENTAL CORP.,

Chapter 11, Subchapter V
Case No.: 22-00353
Hon. Scott W. Dales
Filed: February 25, 2022

Debtor.
_____/

## MOTION TO (I) APPROVE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(b); (II) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND LEASES TO PURCHASER; AND (III) GRANTING FURTHER RELATED RELIEF

**NOW COMES** Superior Environmental Corp. ("Debtor"), by and through its attorneys, CBH Attorneys & Counselors, PLLC, and for its Motion to (i) Approve Sale of Substantially All Assets of Debtor Outside the Ordinary Course of Business, Free And Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(b)&(F); (ii) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Leases to Purchaser; and (iii) Granting Further Related Relief ("Motion") states as follows:

1.  The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on February 18, 2022 ("Petition Date").

2.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a), 363, 365, 1146(a) and Fed.R.Bankr.P. 6004 and 6006.

5.  As stated in the Sworn Statement of Jeff Skendrovic ("First Day Affidavit"), which is attached as **Exhibit A**, the Debtor operates an environmental consulting company that provides consulting, investigation and remediation services. The Debtor's headquarters are located at 50 64th Avenue, Suite 3, Coopersville, MI 49404.

6.  For the reasons set forth in the First Day Affidavit, your Debtor has determined that it is in the best interest of the Estate that the assets of the Debtor be sold as soon as practical, noting:

    a.  The Debtor is not profitable; and

    b.  The Debtor has a judgment creditor which it owes approximately Five Hundred Eighty Thousand and 00/100 Dollars ($580,000.00) (the "Judgment"). Although the judgment is under appeal and relates to a transaction that was commenced Twenty-Five (25) years ago, the size of the judgment, along with other factors, make the sale of the Company's assets advisable.

7.  The Judgment along with the decline of Debtor's revenue make it difficult for the Debtor to operate.

8.  The Debtor initially analyzed its options for sale several years ago, which efforts led to the creation of an ESOP, allowing employee ownership in the Company and allowed it to continue.

9.  The Debtor renewed its efforts to either sell its assets or acquire a strategic partner. Due to the specialized nature of the Debtor's business, and its geographic footprint, the number of potential buyers or strategic partners are limited. The Debtor, as a result of its position in the industry and its previous efforts described in ¶8, is aware of substantially all potential buyers and strategic partners. The Debtor actively sought solicitations from various parties but, although the industry is aware that the Debtor and/or its assets were for sale, it has only, as of this date, received one offer.

10. Directly prior to the Petition Date, the Debtor received an offer from one AKT Peerless Environmental Services, LLC ("AKT") for the purchase of substantially all the "non-cash" assets of

the Debtor for the sum of Two Hundred Seventy-Five Thousand and 00/100 Dollars ($275,000.00)[1] ("Purchase Price").

11. The proposed purchase, in the form of a certain Asset Purchase Agreement ("APA"), is attached as **Exhibit B**.

12. The APA proposes to sell substantially all the non-cash assets of the Debtor, including (i) machinery, equipment and vehicles (except as delineated below); (ii) customer contracts, intellectual property; and (iii) intangible property rights as specifically delineated in the APA. The assets that are the subject of the APA are referred to as the ("Purchased Assets").

13. The Purchased Assets exclude (i) a 2019 Ford Ecosport; (ii) cash; (iii) accounts receivable; and (iv) other miscellaneous assets, delineated in ¶1.2 of the APA and ¶19 of this Motion. The above assets are referred to as the "Excluded Assets."

14. Your Debtor believes that the Purchase Price is the best available under the circumstances:

    a. The machinery, equipment, and included vehicles that are the subject of the APA are attached as **Exhibit C**[2];

    b. The valuation for the vehicles that are the subject of the APA are based on "Kelly Blue Book" wholesale value; and

    c. The remaining machinery and equipment values are based upon the comparable sale and book value, which is substantially similar to fair market value under the circumstances.

15. The Debtor believes the value of customer contracts, intellectual property and intangible property rights is fairly valued in the APA at $99,855.00. The Debtor is a personal service business. Its goodwill, particularly in light of its currently distressed position, is difficult to concretely value. The

---

[1] AKT originally offered $250,000.00 but Debtor successfully negotiated an additional $25,000.00.
[2] Debtor estimated the liquidation value of these assets at $175,145.00. Debtor's estimated liquidation values include: (i) Kelly Blue Book wholesale value of the vehicles included in the APA at $145,400.00; (ii) trailers valued at $12,200.00; and (iii) equipment and machinery valued at $16,545.00.

3

Debtor is satisfied that the Purchase Price adequately compensates the Debtor for these intangible assets.

16. The APA contemplates the sale of the Purchased Assets free and clear of liens, encumbrances and claims pursuant to 11 U.S.C. §363(b) with liens, encumbrances, and claims attaching to the sale proceeds in the same rank, validity and priority as existed pre-petition.

17. The APA also contemplates, subject to customer approval, the assumption and assignment of certain customer contracts as described therein.

18. The APA further contemplates a break-up fee specified in ¶ 2.4 of the APA (the "Break-Up Fee"). The Break-Up Fee provides that, in the event the sale is not approved or otherwise does not occur through no fault of AKT, AKT's deposit will be returned and AKT will receive an administrative claim under Section 506(c) for the amount necessary to reimburse AKT for the fees and expenses incurred in connection with drafting the APA, including the cost of due diligence, legal fees, and accountant fees.

19. As stated, your Debtor seeks authority to sell the Purchased Assets, subject to the provisions of the APA free and clear of all liens, claims and encumbrances with same attaching to proceeds in the same rank and validity as existed prior to sale. The Purchased Assets do not include: (i) any Excluded Asset, as defined in the APA; (ii) any and all avoidance actions or causes of action arising under the Bankruptcy Code or applicable state Law, including all rights and avoidance claims of Debtor arising under Chapter 5 of the Bankruptcy Code; (iii) the Debtor's accounts receivables (including the pending Employee Retention Credit under the CARES Act), cash and unbilled receivables; (iv) contracts that are not Customer Contracts as defined in the APA; (v) any bank accounts; (vi) the 2019 Ford Ecosport, and (vii) the Debtor's interest in cash.

20.     Your Debtor proposes to sell the Purchased Assets, in a manner consistent with the APA, to the highest and best bidder at an auction to be conducted in open court subject to the following terms and conditions set forth in below:

21.     In conjunction with the proposed sale, your Debtor states that it has three secured creditors, identified below:

   a. Ford Motor Credit Company ("FMCC") has a secured claim in the amount of $15,518.00. FMCC's collateral is not the subject of this sale;

   b. Vaughn Quince and James Quince, former owners of the Debtor, have a secured claim in the amount of $143,557.00, which is secured by essentially all the assets of the Debtor. This claim shall be paid $120,600.00;[3] and

   c. U.S. Small Business Administration ("SBA") has a secured claim in the amount of $150,000.00 which is secured by a second lien on essentially all the assets of the Debtor[4].

22.     The proposed sale is a proper exercise of the Debtor's business judgment. It provides for the sale of the Purchased Assets for the best price available as a going concern.

23.     Debtor's management believes that the sale of the Purchased Assets as a going concern would generate a greater amount than if same were sold through a traditional liquidating sale. As stated above, AKT is proposing to pay $99,855.00 above the value of the physical assets.

---

[3] Although the Quinces hold a first priority secured positions on all of Debtor's assets, Debtor does not believe that the Quinces are properly perfected on Debtor's vehicles or trailers. Therefore, at closing Debtor will only distribute to Quinces the AKT sale's proceeds not attributable to the titled vehicles and trailers. Debtor anticipates that Quinces remaining secured claim will be paid in full at the Effective Date of Debtor's liquidating Chapter 11 Plan. In addition, Debtor retains all rights under 11 USC § 544 with regard to any sums paid to the Quinces.

[4] The SBA is not properly perfected against the vehicles. Therefore, it will not be paid from the proceeds sales attributable to the vehicles. However, Debtor anticipates that the SBA's secured claim will be paid in full, with any accrued interest, at the Effective Date of Debtor's liquidating Chapter 11 plan. The sales' proceeds and other cash assets remaining after the sale are more than sufficient to provide the SBA with adequate protection that its secured claim will be paid in full at the Effective Date.

24. Consistent with the APA, AKT will likely be hiring many of the employees of the Debtor. This will limit employee claims against the Debtor and allow for a smooth and efficient transition of existing projects, thereby reducing potential claims against the Debtor.

25. The APA contemplates the assumption of a significant number of Debtor's current customer contracts. Such assumption will reduce the number of potential claims in Debtor's Chapter 11 proceeding, which will increase the pro rata distributions to other creditors. In addition, the assumption of ongoing environmental projects promotes the national public policy of speedy and complete resolution of potential environmental hazards.

26. The proposed purchaser of the Debtor's Assets, AKT, must move swiftly and may not be in a position to purchase the Debtor's Assets if there is a significant delay. Part of the Debtor's value as a going concern is related to its relationship with its clients and its goodwill in the community. If the Debtor were to simply stop operating, the clients would be forced to immediately find another environmental company and the goodwill of the Debtor would suffer.

27. Further, the longer the delay, the greater likelihood that employees will leave the employment of the Debtor, which would decrease the going concern value of the Purchased Assets.

28. As noted in the First Day Affidavit, the Debtor is not operating at a sufficient level to fund a plan of reorganization. Therefore, the best approach is to seek the immediate sale of the assets consistent with the APA.

29. The Debtor believes that an immediate sale of the Assets will benefit its creditors. It believes that the sale price proposed in this Motion is greater than the Liquidation value of its Assets and is the highest price it has been offered for the same among various interested parties.

30. 11 U.S.C. §363(b) of the Code provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." This Court has discretion to determine whether a sale of assets should be approved. See In re Embrace Systems Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995).

31. In determining whether a sale of assets outside the ordinary course of business should be approved pursuant to § 363(b) of the Bankruptcy Code, a debtor has the burden of establishing that a valid business purpose exists. See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983); see also In re Stephens Industry, Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986). Once a debtor has articulated a valid business purpose, however, a presumption arises that the debtor's decision to sell the assets was made on an informed basis, in good faith and in the honest belief the action was in the best interest of the estate. See In re Integrated Resources, Inc., 147 B.R. at 656 (S.D.N.Y. 1992); In re S.N.A. Nut Company, 186 B.R. 98 (Bankr. N.D. Ill. 1995) (the business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company).

32. Courts within the Sixth Circuit have held that transactions may be approved under section 363 when they are supported by sound business judgment. See. e.g.. Stephens Industries, Inc. v. McClung, 789 F.2d 386, 389-390 (6th Cir. 1986) ("a court can authorize a sale of a Debtors' assets when a sound business purpose dictates such action"); see also In re Embrace Sys. Corp. 178 B.R. 112, 124 (Bankr. W.D. Mich 1995); see also In re North American Royalties, Inc. 276 B.R. 860, 866 (Bankr. E.D. Tenn. 2002); see also In re Quality Stores Inc. 272 B.R. 643, 647 (Bankr. W.D. Mich 2002) ("noting the 'wide business discretion' given to debtors selling assets under § 363").

33. The Debtor requests approval to sell the Assets to a purchaser free and clear of any and all liens, claims and encumbrances ("Claims") pursuant to § 363(f) of the Bankruptcy Code. A debtor may sell property under §§ 363(b) and 363(f) of the Bankruptcy Code "free and clear of any interest in such property of an entity other than the estate," if one of the following conditions are met:

    (1)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

7

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

34. The Debtor proposes that any Claims that exist immediately prior to the closing of sale of the Assets attach to the proceeds of the sale with the same validity, priority, force and effect as they had at such time, thus satisfying the requirement of § 363(f) of the Code. Specifically, all holders of Claims could be compelled to accept a money satisfaction of the Claims in legal or equitable proceedings in accordance with § 363(f)(5) of the Code.

35. As part of the proposed sale of Assets, it is expected that successful bidders may direct Debtor to assume and the Designated Contracts.

36. Section 365(b)(1) of the Code requires that the Debtor cure all defaults in any contract assumed by the Debtor and provide adequate assurance of future performance. Prior to entry of an order approving this Motion, Seller will obtain confirmation from the customers of the Designated Contracts that the specific contract is not in default. Debtor will not assume or assign any contracts in default.

37. The Debtor requests that the Court authorize it to assume and assign all Designated Contracts in which the contracting parties have agreed to the assignment and have no defaults as described on **Exhibit D**.

38. The Debtor will provide notice of this Motion to (a) all parties on the Debtor's matrix and (b) all parties that have requested notice in this case pursuant to Fed.R.Bankr.P. 2002.

8

39. The Debtor received an offer to purchase substantially all of its non-cash assets for the sum of $275,000.00 ("Initial Offer") from AKT which, at AKT's sole discretion, will include hiring the current employees of the Debtor.

40. The Debtor will seek approval of the Initial Offer at the Hearing set to approve this Sale Motion ("Sale Hearing").

41. Parties wishing to place a competitive bid for the Debtor's Assets must make a refundable good faith deposit of Twenty-Five Thousand and 00/100 Dollars ($25,000.00) with the undersigned counsel at least three days prior to the Sale Hearing. Any bids shall be in strict conformance with the APA.

42. Opening bids shall begin at $285,000.00 with incremental bidding of at least $5,000.00.

43. The Debtor shall also be authorized to accept a back-up bidder.

44. Any bidder must provide an irrevocable letter of credit or such other evidence, suitable in the discretion of the Trustee, that it is immediately able to consummate the sale.

45. The closing shall take place as soon as is practicable after the Sale Hearing, but in no event shall it take place beyond five (5) business days of the Sale Hearing.

46. That the Assets shall be sold **"As is, Where is"** without representation of warranty, expressed or implied, of any kind or nature, or description, including, without limitation, any warranty of marketability, usability or fitness for any purpose. The Debtor shall not be required to inspect, test or report on the condition of the Assets, the operability of any system(s) on the Assets or the existence of any defects in the Assets. Any warranties made by the Debtor, consistent with the APA, shall terminate at closing.

47. Finally, the Debtor will provide notice of the sale in accordance with Bankruptcy Rule 2002(a)(2) and the Debtor requests that the Court waive any 14-day stay that might be imposed under Bankruptcy Rules 6004(h) and 6006(d) for any order authorizing the sale property.

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested in this Sale Motion, including: (i) Authorizing the sale of substantially all of the Assets pursuant to section 363 of the bankruptcy code, free and clear of all liens, claims and encumbrances; (ii) Authorizing Debtor to assume and assign the Designated Contracts; (iv) Scheduling hearings on approval thereof; (v) waiving any 14-day stay under Bankruptcy Rules and (vi) Granting related relief as may be just and appropriate.

                                                **CBH ATTORNEYS & COUNSELORS, PLLC**
                                                Attorneys for Superior Environmental Corp.

Dated: March 3, 2022            By: _____
                                                  Steven M. Bylenga (P73492)

BUSINESS ADDRESS:
25 Division Avenue S., Suite 500
Grand Rapids, MI 49503
Telephone: (616) 608-3061